UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) <br> ) <br> ) |
| v. | ) Criminal Case No. 08-00089-01 (CKK) <br> ) |
| BARNARD V. MORGAN, | ) <br> ) |
| Defendant. | ) <br> ) |

# MEMORANDUM OPINION
### (April 12, 2019)

A Final Hearing on Violation of Defendant Barnard V. Morgan's supervised release was held initially on March 25, 2019 and continued to and completed on April 5, 2019. *See* Minute Entries dated March 25, 2019 and April 5, 2019. Upon consideration of the Petitions by the United States Probation Office dated May 12, 2016, ECF No. 81; November 17, 2016, ECF No. 84; March 17, 2017, ECF No. 86; April 18, 2017, ECF No. 91; May 16, 2017, ECF No. 93; June 12, 2017, ECF No. 94; and September 11, 2018, ECF No. 102, representations made at the Final Revocation Hearing/Sentencing, and the entire record in this case, including the factors set forth in 18 U.S.C. Section 3553(a) and Chapter 7 of the Sentencing Guidelines, this Court: (1) determined that Defendant Barnard V. Morgan ("Defendant" or "Mr. Morgan") had violated the conditions of his supervised release; (2) revoked Mr. Morgan's supervision; and (3) sentenced him to a term of eight months of imprisonment, followed by twelve months of supervised release. This Opinion provides the written rationale for the Court's oral rulings. A separate Order accompanies this Opinion.

**I. Background**

On February 13, 2009, Mr. Morgan was sentenced to seventy-two (72) months incarceration, followed by five years of supervised release, after pleading guilty to one count of Unlawful Possession with Intent to Distribute 50 Grams or More of Cocaine Base. Mr. Morgan's supervision began on September 20, 2013, and expired on September 19, 2018, and his special conditions of supervised release included: (1) educational/vocational training; (2) mental health treatment; (3) substance abuse testing and treatment; and (4) payment of a $1500 fine. *See* Judgment in a Criminal Case, ECF No. 74, at 3. Mr. Morgan's standard conditions of supervised release included, *inter alia*, reporting to the Probation Office and answering truthfully all inquiries by the Probation Officer. *Id.* Mr. Morgan's original Sentencing Guidelines range was 262 months at the low end, including a mandatory minimum of 120 months, and Mr. Morgan is a career offender. The sentenced imposed was a substantial departure from the applicable Sentencing Guidelines.

**A. Probation Petitions - Violations**

On May 12, 2016, the Probation Office filed its [81] Probation Petition, requesting the issuance of a summons and scheduling of a Hearing on Violation of supervised release based upon Mr. Morgan's March 31, 2016 arrest in the District of Columbia and his pending charge of Possession with Intent to Distribute a Controlled Substance (Violation No. 1).[1] By Minute Order dated May 12, 2016, this Court concurred with the recommendation of the Probation Office and

---

[1] The Probation Petition noted that "[s]ince the start of supervision, Mr. Morgan ha[d] been arrested five times" although the four previous arrests had "resulted in no formal charges" and accordingly, no action had been requested. May 12, 2016 Probation Petition, ECF No. 81, at 4.

referred supervision of the Hearing on Violation to a Magistrate Judge. Magistrate Judge Alan Kay commenced a Preliminary Revocation Hearing in June of 2016, but that hearing was continued to permit the trailing of the charge pending in the Superior Court of the District of Columbia. In the meantime, Mr. Morgan incurred additional violations, beginning on April 27, 2016 and continuing through September 10, 2018, as set forth in Probation Petitions, ECF Nos. 84 (Violations Nos. 2-15), 86 (Violation Nos. 16-19), 91 (Violation Nos. 20-22), 93 (Violation No. 23), 94 (Violation No. 24), and 102 (Violations labeled Nos. 24-25), and consideration of these violations was intended to be included in any Hearing on Violation.[2]

On December 12, 2018, Magistrate Judge Deborah Robinson held a Preliminary Revocation Hearing as to Mr. Morgan.[3] Magistrate Judge Robinson noted that the Probation Office withdrew Violation No. 1 (May 12, 2016 Petition, ECF No. 81), involving Mr. Morgan's new arrest because he was found not guilty on that charge. The Probation Office further withdrew Violations Nos. 20-22 (April 18, 2017 Petition, ECF No. 91) and Violation No. 23 (May 16, 2017 Petition, ECF No. 93). Mr. Morgan conceded, with an explanation through counsel, Violations Nos. 2-15 (November 17, 2016 Petition, ECF No. 84); Violations 16-19 (March 17, 2017 Petition, ECF No. 86); and Violations Nos. 25-26 (September 11, 2018 Petition, ECF No. 102). Mr. Morgan disputed, with testimony, Violation No. 24 (June 24, 2017 Petition, ECF No. 94).

### B. Conceded Violations

The twenty violations of supervised release conceded by Mr. Morgan are as follows:

- Violation No. 2: Failure to report for substance abuse intake assessment at Family Health Center ("FHC") on 4/27/2016.

- Violation No. 3: Failure to report for substance abuse treatment at FHC on 5/11/2016.

---

[2] The violations numbered 24 and 25, in ECF no. 102, were ultimately renumbered violations 25 and 26.

[3] The referral was transferred to Magistrate Judge Robinson when Magistrate Judge Kay retired.

- Violation No. 4: Failure to report for substance abuse treatment at FHC on 5/25/2016

- Violation No. 5: Failure to report for substance abuse treatment at FHC on 6/2/2016.

- Violation No. 6: Failure to report for substance abuse treatment at FHC on 6/9/2016.

- Violation No. 7: Failure to report for substance abuse treatment at FHC on 6/15/2016
.
- Violation No. 8: Failure to report for substance abuse treatment at FHC on 6/21/2016.

- Violation No. 9: Positive drug test for marijuana on 4/19/2016.

- Violation No. 10: Positive drug test for marijuana on 5/2/2016.

- Violation No. 11: Positive drug test for marijuana on 7/7/2016.

- Violation No. 12: Positive drug test for marijuana on 8/1/2016.
.
- Violation No. 13: Positive drug test for marijuana on 8/29/2016.

- Violation No. 14: Failure to submit to a random drug test in the Probation Office on 10/7/2016.

- Violation No. 15: Failure to submit to a random drug test in the Probation Office on 11/7/2016.

- Violation No. 16: Failure to submit to a drug test at the Renaissance Treatment Center ("RTC") on 11/17/2016.

- Violation No. 17: Failed to submit to a drug test at RTC on 12/1/2016.

- Violation No. 18: Failure to submit to a drug test at RTC on 12/29/2016.

- Violation No. 19: Failure to submit to a drug test at RTC on 1/30/2017.

- Violation No. 25: Failure to submit to a urinalysis test on 6/20/2018, ECF No. [102].

- Violation No. 26: Failure to report to Probation Office on 6/22/2018 and 9/10/2018.[4]

At the hearing before Magistrate Judge Robinson, the Probation Officer recommended that Mr. Morgan's supervision be terminated and that he be sentenced at the low end of the Guidelines, for a term of 8-14 months, and the Government concurred with that recommendation. Transcript of December 12, 2018 Hearing, ECF No. 110, at 26-27. Defendant, through counsel, requested that his supervision be extended for twelve months. *Id.* at 27. Magistrate Judge Robinson issued her [111] Report and Recommendation, which recommended that Mr. Morgan's term of supervision be extended for twelve months and no term of incarceration be imposed, in part because "Defendant ha[d] made significant progress while on supervised release by securing housing and employment, and incarceration likely would derail his progress on both those fronts." Report and Recommendation, ECF No. 111, at 3.

The Court adopted the Magistrate Judge's [111] Report and Recommendation regarding the Defendant's concession of violations numbers 2-19 and 25-26 and his non-concession of violation number 24, but this Court declined to adopt the Magistrate Judge's sentencing recommendation. *See* March 7, 2019 Order, ECF No. 114.

**II. Final Hearing on Revocation/Sentencing**

This Court scheduled a Final Hearing on Revocation for March 25, 2019. At that hearing, this Court considered Mr. Morgan's concession to twenty of the twenty-one Grade C violations, all of which occurred prior to the termination of his supervised release. The Court revoked Mr. Morgan's supervision based upon these conceded violations. The Probation Officer noted some additional violations of the conditions of Mr. Morgan's release that arose after the termination of

---

[4] At the March 25, 2019 Final Hearing on Revocation, the Court read these violations into the record. The dates for two of the violations have been corrected in this Memorandum Opinion.

5

Mr. Morgan's supervision. Specifically, the Probation Office alleged that Mr. Morgan violated the conditions of his release ("CR") through his: (1) failure to submit to a random urinalysis on February 15, 2019; (2) failure to report to the Probation Office on February 15, 2019; and (3) incurring a February 19, 2019 arrest for two counts of attempted-second degree cruelty to children and two counts of simple assault. *See* March 6, 2019 Probation Petition, ECF No.112.

Defendant contested the February 15, 2019 violations, on grounds that he did not have notice of the drug testing on that date. The Probation Officer testified that, on February 15, 2019, she met with Mr. Morgan in the parking lot of a Safeway in the District of Columbia to administer a random sweat patch drug test. She had contacted Mr. Morgan in the morning prior to meeting him. When they met, Mr. Morgan requested that the test be administered elsewhere, and the Probation Officer instructed him to come to the Probation Office at 3:30 p.m. Mr. Morgan sent her a text at 3:29 p.m., stating that he was unable to come, and the test was not administered that day. Mr. Morgan was scheduled to report to the Probation Office on February 19, 2019, but he was unable to do so because of his arrest on the new charge. He reported to the Probation Office on February 27, 2019, and a drug test was administered that day and returned negative. This Court indicated that the February 15, 2019 violations of the conditions of Mr. Morgan's release would be used only in deciding how to proceed in terms of sentencing and that Mr. Morgan's new arrest would not be considered by the Court.

The Probation Officer recommended that Mr. Morgan be sentenced at the low end of the Guidelines range (8-14 months), followed by 12 months of supervised release, and the Government agreed with that recommendation. Defendant, through counsel, acknowledged that revocation was anticipated, but argued that he should not receive any term of incarceration. Defendant suggested that he has made good progress while on supervision, in terms of securing and maintaining housing

and having negative drug tests during the last portion of his drug testing. Mr. Morgan reported that he operates two businesses — power washing at various locations and an ice cream truck — and he indicated that there would be interruptions with his employment and housing if he was incarcerated. Because Mr. Morgan had provided neither the Probation Office nor the Court with any documentation as evidence of his employment and earnings, the Court continued the Final Revocation Hearing to April 5, 2019, to permit Mr. Morgan an opportunity to produce documentation in support of his claim of employment, which would then be considered by the Court in the context of Defendant's sentence.

The Court reconvened the Final Hearing on Revocation on April 5, 2019. The Court indicated that Defendant had sent a letter to the Court, which had been shared with counsel and the Probation Office. Furthermore, in advance of the hearing, Mr. Morgan had produced the following items: (1) a Virginia motor vehicle registration; (2) two copies of a Maryland driver's license; (3) a Maryland certificate of title for a vehicle; (4) a certificate of origin for a vehicle; (5) a receipt of purchases from Star Vending and two handwritten lists that may be inventory for the ice cream truck, although no ice cream was listed.

As a preliminary matter, the Probation Officer noted that Mr. Morgan did not report to her on either April 2 or April 3, 2019, to discuss the documentation, as ordered by the Court, although he did drop the documents at the courthouse on April 3, 2019, while she was out of the office. Mr. Morgan indicated to the Probation Officer that he could not meet on April 2, 2019, because he had no money, and he could not meet on April 3, 2019, because he had to appear in landlord-tenant court regarding his apparent non-payment of rent for one year.[5]

---

[5] The Probation Officer was previously unaware of Defendant's non-payment of rent. Although Mr. Morgan had in his possession an April 3, 2019 mediation sign-in sheet for landlord-tenant court, signed by him, it is unclear if Mr. Morgan was in court when they called his case because

At the hearing, Defendant, through counsel, provided a photo of a Navy Federal Credit Union account, reflecting a withdrawal of $7,000.00, which was presumably applied toward Mr. Morgan's overdue rent. The Court noted that there was nothing in that record concerning deposits that would suggest that Mr. Morgan had income coming in during this period or identified the source of the $7,000.00. During the hearing, Defendant, through counsel, provided additional documents in the form of: (1) photos showing himself washing cars and the ice cream truck; (2) a Maryland title for the power-washing equipment dated May 10, 2018; (3) a photo of the Virginia license plate for the ice cream truck, with a sticker for December 2019; (4) a Virginia motor vehicle registration form for the ice cream truck with an expiration date of December 31, 2019; (5) a document from the Maryland Department of Transportation, in the name of Barnard Vincent Morgan; (6) three receipts from Star Vending, which list items purchased for stocking the truck; (7) a Maryland driver's license; (8) two inventory lists of items needed for the truck; (9) the limited liability operating agreement between Mr. Morgan and his company, Community Tithes; (10) the Articles of Organization for Community Tithes; (11) documents for a tax identification number dated August 23, 2013; and (11) the policy from the Maryland Automobile Insurance Fund for the ice cream truck, which expired on March 20, 2018.[6]

The Court reviewed all of the documentation but found that there was nothing to indicate that Mr. Morgan was working and generating income, such as financial records/reports or tax returns from either of his alleged businesses, or bank statements showing deposits. Defendant, through counsel, indicated that not only is operation of his ice cream truck business seasonal, but

---

an *ex parte* hearing was set for April 17, 2019, after Defendant failed to appear and a default was entered.

[6] During the hearing, the Court noted that some of these documents may be duplicates of documents provided earlier by the Defendant.

it has been disrupted by the fact that he has been on GPS monitoring. Mr. Morgan alleged that because of the GPS monitoring, he has been unable to effectively operate his business for the last three or four months, and there is no documentation demonstrating income during that period. The Court noted however that it had not put any restrictions on the period for which income records could be produced by Mr. Morgan. The Probation Officer indicated that she has been tracking Mr. Morgan's GPS points, and he has been leaving his home freely within his curfew of 6:00 a.m. to 8:00 p.m., which should permit adequate time to operate his ice cream truck, although she acknowledged that he was on home detention for about 30 days sometime during the fall of 2018. The Court acknowledged that sale of ice cream is a seasonal business but did not find credible Mr. Morgan's claim that GPS monitoring interfered with his business.

The Court ascertained that Mr. Morgan does not have a current District of Columbia driver's license. According to the Defendant, his District of Columbia driver's license was transferred to Maryland in connection with his supervision, and he does not have a District of Columbia driver's license now despite having lived in the District for the last 18 months. The ice cream business is conducted in Maryland.

The Court questioned whether the ice cream truck is classified as a commercial vehicle as opposed to a private vehicle because the Virginia motor vehicle registration he provided lists a vehicle as a private vehicle. The only documentation proffered by Defendant in support of the ice cream truck being classified as a commercial vehicle is the commercial policy declaration in the Maryland Automobile Insurance Fund policy. Defendant acknowledged that he does not have an unexpired Maryland vehicle registration for a commercial vehicle.

The Government posited that Mr. Morgan further lacks the paperwork that is normally required for operating a truck used for vending food, such as a valid health inspection certificate

or a food protection manager's certificate. Defendant failed to proffer evidence to show that he has obtained the appropriate food services licensing, except for a photograph that shows he has a mobile vendor license for Prince George's County, Maryland. That mobile vendor license does not indicate any year. Defendant asserted that his business license for Community Tithes was transferred to Maryland; however, he did not proffer any evidence to show that Community Tithes is registered or licensed as a business under that name in the District or in Maryland. Counsel for the Government and the Probation Officer undertook to search for such business registration/licensing for Community Tithes in either Maryland or the District of Columbia, and they were unable to find any records thereof. Defendant admitted he has no business license in Maryland.

Defendant requested that this Court consider the detriment to his ongoing employment and maintenance of stable housing in determining whether to impose a sentence of incarceration after the revocation of his supervised release. The Court has concluded that there is no evidence that either Mr. Morgan's ice cream truck business or his power washing business is a going concern because there are no financial records to support that either business generates any revenue, nor is his business entity — Community Tithes — registered in either Maryland or the District of Columbia. Furthermore, Mr. Morgan does not possess a valid District of Columbia driver's license, an unexpired commercial motor vehicle registration in any jurisdiction, or any of the certificates normally required when running an ice cream/food truck (except for a Prince George's County mobile vendor license), and accordingly, this would make it impossible for him to legally operate the ice cream truck. While Mr. Morgan has provided limited evidence supporting initial steps taken to establish a business doing power washing, and/or operating an ice cream truck, there are still many pieces of the puzzle missing, and he has failed to proffer anything to show that either

business has generated any revenue whatsoever. Furthermore, Mr. Morgan's claim that he has secured and maintained housing is belied by his failure to pay rent for a year, which resulted in a recent action in landlord-tenant court.

While the Court commends Mr. Morgan for his efforts to find a viable legal way to generate income, and recognizes that Defendant is articulate and has potential, the Court finds that a term of imprisonment is warranted in this case. The Court focused on Mr. Morgan's history of non-compliance with the terms and conditions of his supervised release, as evidenced by his 20 violations which continued until near the end of his term of supervision. The Court credited the unrebutted testimony of the Probation Officer regarding Mr. Morgan's failure to report and take a drug test on February 15, 2019, after his supervision had expired. The Court considered further Mr. Morgan's risk of reoffending, which was deemed high due to his financial situation and lack of gainful employment. The Court sentenced Mr. Morgan to 8 months incarceration, which is at the low end of the Guidelines range, and 12 months of supervision. The Court mandated that Mr. Morgan will participate in a cognitive behavioral treatment program and indicated that a status conference shall be set upon the Defendant's release from incarceration so that the Court can follow up on Defendant's progress.

### III.     Applicable Law and Sentencing Guidelines

In determining Mr. Morgan's sentence, the Court relied upon the applicable law and sentencing Guidelines which follow. The Court's disposition of supervised release violations is governed by 18 U.S.C. § 3583. *See* Fed. R. Crim. P. 32.1(d); 18 U.S.C. § 3583. Specifically, § 3583(e) directs courts to consider several factors drawn from 18 U.S.C. § 3553, including: (1) the history and characteristics of the defendant; (2) the need for the sentence imposed to afford adequate deterrence to criminal conduct and protect the public from further crimes of the

defendant;(3) to provide the defendant with correctional treatment in the most effective manner; and (4) the kinds of sentences and the sentencing range established in the Sentencing Guidelines for the applicable category of offense committed by the applicable category of defendant. 18 U.S.C. § 3583(e); 18 U.S.C. §§ 3553(a)(1); (a)(2)(B); (a)(2)(C); (a)(2)(D); (a)(4). After considering these factors, the Court can modify the conditions of supervised release; or, if the Court finds by a preponderance of the evidence that a defendant has violated one or more terms of supervised release, the Court may revoke supervised release and require the defendant to serve an additional period of imprisonment and supervised release. *Id.* §§ 3583(e)(2); (e)(3). Pursuant to 18 U.S.C. § 3583(g), "[i]f the defendant refuses to comply with drug testing imposed as a condition of supervised release [Violations Nos. 14-19], . . . the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment not to exceed the maximum term of imprisonment authorized under subsection (e)(3)." 18 U.S.C. § 3583(g)(3); U.S.S.G.§7B1.4, comment (n.5).

Under the Sentencing Guidelines, which provide nonbinding advisory policy statements regarding supervised release violations arising from federal convictions, Mr. Morgan's violations would be considered Grade C violations. *See* U.S.S.G. § 7B1.1(a)(3). The Guidelines recommend that, upon a finding of a Grade C violation, the Court may revoke supervised release or extend the term of supervised release and/or modify the conditions of supervision. *See* U.S.S.G. § 7B1.3(a)(2). Based on Mr. Morgan's criminal history category of VI, the Sentencing Guidelines recommend a period of imprisonment of eight to fourteen months if the Court revokes his supervision. *See* U.S.S.G. § 7B1.4(a). The maximum term of imprisonment upon revocation of supervised release for a defendant convicted of a Class A felony, such as Mr. Morgan's conviction

under 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(iii), is 60 months.  See 18 U.S.C. § 3583(e)(3).

The sentence imposed on Mr. Morgan is within the applicable Guidelines.


DATED: April 12, 2019                    _____/s/_____
                                         COLLEEN KOLLAR-KOTELLY
                                         UNITED STATES DISTRICT JUDGE